609 So.2d 37 (1992)
THE FLORIDA BAR, Complainant,
v.
Myron C. PREVATT, Jr., Respondent.
No. 77271.
Supreme Court of Florida.
November 25, 1992.
John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel and Alisa M. Smith, Bar Counsel, Tallahassee, for complainant.
Richard E. Welty, Starke, for respondent.
PER CURIAM.
This disciplinary report is before the Court on complaint from The Florida Bar and the referee's report. We have jurisdiction. Art. V, § 15, Fla. Const.
The referee's findings of fact are supported by competent, substantial evidence and therefore are considered conclusive.
The Fla. Bar v. Seldin, 526 So.2d 41, 43 (Fla. 1988). The referee found:
a. Singleton McKay was a client of Respondent, Myron C. Prevatt, Jr.
b. Mr. McKay, at age 81, suffered a stroke on January 16, 1978 and was hospitalized.
c. While in the hospital in a state of questionable competence Mr. McKay executed both a general power of attorney and a joint savings account signature authorization in favor of Respondent.
d. Respondent prepared and brought to the hospital witnesses to execute and notarize the aforesaid documents on January 24, 1978.
e. On or about January 25, 1978 Respondent knew that Mr. McKay's family sought the appointment of a guardian. Respondent's response by letter indicated that his authority to act on behalf of Mr. McKay is only transitional and that a long term arrangement would at some point need to be effected.
f. Mr. McKay was placed in nursing home care and Respondent undertook to manage his financial affairs.
g. Over the next several years Respondent removed funds from the possession of Mr. McKay and used them to his own ends in the form of loans to himself totaling in excess of $15,000.00.
h. Respondent also used Mr. McKay's money to make loans to Respondent's friends and clients, including a $5,000.00 loan discharged in bankruptcy, a $15,578.37 second mortgage loan lost when the forced sale of the asset raised insufficient funds to cover the mortgage, and lastly a $4,000.00 loan where interest earnings of $3,600.00 were never recovered.
i. Mr. McKay's assets were in excess of $90,000.00 in 1978 and were less than $50,000.00 upon his demise.
j. Respondent memorialized his loans from Mr. McKay's assets via promissory notes, amortization schedules, and a guardianship fee repayment program. Respondent describes the computation of the guardianship fee schedule as arbitrary and admits no statements of services were prepared to support the fee schedule taxed against Mr. McKay's assets.
k. This process of loans, refinancing of existing loans, and payment through an amortization schedule driven by guardianship fee assessments continued for 6 years until Mr. McKay's death in September of 1984.

*38 l. Respondent continued to administer to the affairs of Mr. McKay even after his death upon the authority of the power of attorney executed in 1978.
m. The balance of the loans made by Respondent from the assets of Mr. McKay to himself remained unpaid even after the death of Mr. McKay. In fact, some of the loans remain[ed] unpaid until settlement was had in resolution of a civil suit involving the management of Mr. McKay's estate in 1991, a period in excess of 10 years.
n. Even though Respondent had prepared Mr. McKay's Will, it was not probated until four years after his death, nor was an inventory of assets prepared near to the time of his death, nor were potential beneficiaries to the Will contacted (in fact a named beneficiary surviving Mr. McKay died prior to the probate of the Will and was precluded from enjoying the munificence of Mr. McKay).
o. Mr. McKay's family contacted Respondent seeking to have the estate probated and an accounting of assets made in November of 1984.
p. Mr. McKay's Will was filed by Respondent on November 30, 1988.
The referee concluded:
The harm worked upon Mr. McKay, his family, his heirs, and his friends was extensive, long lasting, life altering and irreparable... .
Finally, litigation was necessary to establish a final accounting of assets. The resultant public spectacle discredited the organized Bar and revealed the abuse of position, by an attorney.
Based on these facts the referee recommended, despite Prevatt's offer of alcoholism as mitigation, that Prevatt be disbarred for five years. We agree with the sanction recommended by the referee as the only appropriate one in these aggravated circumstances. The Fla. Bar v. Shuminer, 567 So.2d 430 (Fla. 1990) (disbarment; addiction fails to outweigh seriousness of misappropriations); The Fla. Bar v. Golub, 550 So.2d 455 (Fla. 1989) (disbarment; alcoholism explains conduct, but does not excuse it); The Fla. Bar v. Knowles, 500 So.2d 140 (Fla. 1986) (disbarment despite alcoholism where misappropriations continued over several years); see also Florida's Standards for Imposing Lawyer Sanctions § 9.22(b), (c), (h), (i), (j) (Fla.Bar Bd. Governors 1986).
Accordingly we disbar Prevatt, finding him guilty of violating Rules Regulating The Florida Bar 3-4.3 (a lawyer shall not commit any act which is unlawful or contrary to honesty and justice), 3-4.4 (a lawyer shall not commit criminal misconduct), 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client), 4-1.4(a) (a lawyer shall keep a client reasonably informed and promptly comply with reasonable requests for information), 4-8.4(a) (a lawyer shall not violate the Rules of Professional Conduct), 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 4-1.15 (a lawyer shall keep a client's property safe), as well as chapter 5 of the Rules Regulating The Florida Bar (a lawyer shall observe the rules regulating trust accounts); Disciplinary Rules[1] 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice), 1-102(A)(6) (a lawyer shall not engage in conduct adversely reflecting on fitness to practice), 9-102(A) (a lawyer shall preserve client funds), and 9-102(B)(3) (a lawyer shall maintain complete records) of the former Code of Professional Responsibility; and article XI, rules 11.02(3) (a lawyer shall not engage in acts contrary to honesty and justice), and 11.02(4) (a lawyer shall hold the client's property in trust) of the former Integration Rule of The Florida Bar.
In order to allow Prevatt thirty days to protect the interests of his present clients, disbarment shall take effect on December 28, 1992, but he shall accept no new business from the release date of this opinion. Judgment for costs in the amount of $11,991.86 *39 is entered against Prevatt, for which sum let execution issue.
It is so ordered.
THE FILING OF A MOTION FOR REHEARING SHALL NOT ALTER THE EFFECTIVE DATE OF THIS DISBARMENT.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] For misconduct prior to January 1, 1987.