596 So.2d 1051 (1992)
THE FLORIDA BAR, Complainant,
v.
John Robert FORBES, Respondent.
No. 76451.
Supreme Court of Florida.
April 9, 1992.
John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel and James N. Watson, Jr., Bar Counsel, Tallahassee, for complainant.
John A. Weiss, Tallahassee, for respondent.
PER CURIAM.
This is a disciplinary proceeding in which John Robert Forbes petitions this Court to review the referee's recommendation of disbarment. We have jurisdiction pursuant to article V, section 15, Florida Constitution. For the reasons expressed, we approve the referee's findings of fact and find that disbarment is appropriate.
John Robert Forbes was indicted by a federal grand jury for filing false information on a loan application for a condominium he was developing. He was charged with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (1987); one count of fraud in violation of 18 U.S.C. §§ 2, 1014 (1987); and ten counts of bank fraud in violation of 18 U.S.C. §§ 2, 1344 (1987). On February 2, 1990, Forbes pleaded guilty to Count II of the indictment.
The basis for the indictment is as follows: Forbes was the developer of a real estate project known as the Hoyt house, a ten-unit condominium project on the St. John's River. The project was financed by a $750,000 loan to Forbes from First Federal Savings and Loan Association of Jacksonville (First Federal), the deposits of which were insured at all times relevant to these facts by the Federal Savings and Loan Insurance Corporation.
Forbes' loan with First Federal was based on a $350,000 preliminary estimate *1052 for the construction/renovation costs. When the bid came in, in November of 1984, at $650,000, Forbes obtained another bid from Michael Miller, a local contractor with whom he had dealt before. Miller gave Forbes an estimate of $547,000, which was still not low enough. On November 3, 1984, Forbes, Miller, Miller's wife, and Harvey Manss, the project architect, met and eliminated two of the condominiums, the recreation room, the elevator, and various other features from the project in order to get the construction costs down to $425,000. Forbes told Miller and Manss that he would pay the $75,000 difference with his personal funds.
Manss prepared both contracts, which were signed later that week, although the $350,000 contract was backdated to November 3, 1984 (separate dates and different forms were used to make the contracts appear more authentic). Only the $350,000 contract was forwarded to the bank. The $350,000 contract was fraudulent not only as to its date and price but also as to the scope of the work. It included all of the items that were deleted from the true contract, even though it was drafted by Manss after it was agreed that those items would be deleted. Thus, the contract represented to the bank a scope of work that would have been worth at least the $547,000 bid of Miller before the deletions were made. Officers of First Federal confirmed that these false statements were material to their loan decision.
Subsequently, Miller was unable to obtain the additional funds due him from Forbes. Miller and his subcontractors filed liens against the property in late 1985. In April 1986, First Federal filed a foreclosure suit against the property.
As part of his plea agreement, Forbes admitted knowingly making or causing to be made a materially false statement in the construction contract that was submitted to First Federal in an effort to obtain financing. Forbes also admitted that he made or caused to be made a misrepresentation as to the amount of the contract sum in the construction contract upon which First Federal relied in making its decision to approve the loan.
Forbes was responsible to First Federal for the loan application and the contract submissions since the loan was made to him individually. Forbes was also aware of the fact that there were two contracts reflecting different costs and that the contract submitted to First Federal improperly reflected the lower contract cost. Forbes cooperated with the federal authorities in prosecuting this and other matters unconnected with his misconduct.
The referee found that Forbes was remorseful for his actions and that he had no prior disciplinary record. It is undisputed that Forbes pleaded guilty to knowingly and willfully making materially false statements in a document submitted to First Federal so as to influence its actions for granting a loan (Count II of the federal indictment). Upon conviction, Forbes was sentenced to two years in prison with the condition that he serve only six months in confinement. This violation constitutes a felony.
Based on these findings, the referee found that Forbes had violated the following Rules Regulating The Florida Bar: 3-4.3 (the commission by a lawyer of any act which is unlawful or contrary to honesty and justice); 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or to do so through the acts of another); 4-8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects); and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). In mitigation, the referee found: (1) the absence of a prior disciplinary record; (2) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; and (3) remorse. Florida's Standards for Imposing Lawyer Sanctions § 9.32(a), (e), (1) (Fla.Bar Bd.Governors 1986). In light of the above findings, the referee recommended that Forbes be disbarred, but, because of the mitigating factors, recommended *1053 that the disbarment be retroactive to September 12, 1990, the date of his felony suspension.
The only issue before this Court is the appropriate penalty for Forbes' misconduct. Forbes claims that the proper sentence for the above-mentioned acts is a three-year suspension. Forbes argues that lawyers who have engaged in virtually the same conduct, minus the conviction, have received discipline ranging from public reprimands, The Florida Bar v. Beneke, 464 So.2d 548 (Fla. 1985), to ninety-day suspensions, The Florida Bar v. Siegel, 511 So.2d 995 (Fla. 1987), and The Florida Bar v. Nuckolls, 521 So.2d 1120 (Fla. 1988). We disagree and find this felony conviction justifies disbarment, but we agree with the referee that the mitigating factors justify making this disbarment retroactive to the date of Forbes' suspension.
Accordingly, Forbes is hereby disbarred from the practice, effective September 12, 1990. Judgment for costs is hereby entered against John Robert Forbes in the amount of $1,028.90, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.